IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NICOLAS LAMENDOLA,

        Plaintiff,

v.                                                                CIV 18-0163 KBM/SCY

TAOS COUNTY SHERIFF'S OFFICE,
and JOHN DOES 1-10,

        Defendants.

# **MEMORANDUM OPINION AND ORDER**

        THIS MATTER comes before the Court on Defendant's Rule 12(b)(6) Motion to Dismiss in Lieu of an Answer (*Doc. 4*), filed February 26, 2018, and fully briefed on July 2, 2018. *Docs. 4 & 23*. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 3, 6, 7*.

        This case arises from Plaintiff's employment with the Taos County Sheriff's Office between August 2008 and July 2015. Plaintiff filed suit in the Eighth Judicial District Court of Taos County, State of New Mexico, alleging discrimination and retaliation in violation of the New Mexico Human Rights Act ("NMHRA"), the Americans with Disabilities Act ("ADA"), and Title VII of the Civil Rights Act of 1964 ("Title VII"). *Doc. 1*, Ex. A, at 5-8. Additionally, he alleged a state law claim for retaliatory termination against public policy. *Id.* at 8-9. Taos County Sheriff's Office removed the action to this Court on

February 18, 2018. *See Doc. 1*. Shortly thereafter, it moved to dismiss Plaintiff's Complaint on the basis that the Taos County Sheriff's Office, the defendant named by Plaintiff, is not a suable entity. *Doc. 4*.

On April 19, 2018, the Court held a Motion Hearing on Defendant's Motion to Dismiss. At the hearing, the Court ordered the parties to file supplemental briefs, specifically directing them to address the existence of a merit system ordinance as well as the applicability of *Bristol v. Board of County Comm'rs of County of Clear Creek*, 312 F.3d 1213 (10th Cir. 2002), *Bundy v. Chaves County Board of Commissioners*, 215 F. App'x 759 (10th Cir. 2007) and *Bundy v. Chaves County Board of Commissioners*, 05cv0122 MCA/RLP (Doc. 38) (D.N.M. Apr. 28, 2016). *See Doc. 15*. Defendant filed its supplemental brief on April 27, 2018 (*Doc. 19*), and Plaintiff filed his on July 2, 2018 (*Doc. 23*).

## I.   Legal Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts as true "all well-pleaded factual allegations in a complaint and views these allegations in the light most favorable to the plaintiff." *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009); *Morris v. City of Colorado Springs,* 666 F.3d 654, 660 (10th Cir. 2012). In order to survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## II.   Analysis

Plaintiff's First Amended Complaint asserts claims against the Taos County Sheriff's Office and John Does 1-10. The Taos County Sheriff's Office maintains that

Federal Rule of Civil Procedure 17 and N.M. Stat. Ann. § 4-46-1 preclude Plaintiff's assertion of claims against it. Plaintiff, in contrast, insists that a county sheriff's department is liable under both state and federal law. Resolution of Defendant's Motion requires the Court to explore the interplay between various procedural rules, a state naming statute, principles of agency, and federal and state discrimination laws.

First, Federal Rule of Civil Procedure 17(b) addresses a defendant's capacity to sue and be sued. It provides that for defendants, other than corporations and individuals not acting in a representative capacity, the capacity to sue or be sued is determined by "the law of the state where the court is located." *See* Fed. R. Civ. P. 17(b). Thus, New Mexico law determines whether the Taos County Sheriff's Office has the capacity to be sued for violations of the ADA, Title VII, and the NMHRA.

Section 4-46-1, New Mexico's so-called "naming statute," provides that, "[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the board of county commissioners of the county." *Id*. Thus, a straightforward application of Rule 17(b) and Section 4-46-1 would suggest that Plaintiff must name the Board of County Commissioners of Taos County, rather than the Taos County Sheriff's Office, as the defendant in this case. But, as the Court indicated at the April 19, 2018 Motion Hearing, a handful of Tenth Circuit cases challenge a straightforward application of Rule 17 and Section 4-46-1 in this case.

For instance, in *Bristol*, the Tenth Circuit determined that, because the board of county commissioners there lacked the power to control the hiring, termination, or supervision of the sheriff's employees under Colorado law, the board owed the sheriff's employees no duty under the ADA. *Bristol*, 312 F.3d at 1215. Moreover, in *Bundy*, the

3

Tenth Circuit, this time examining New Mexico law, noted that "[w]hile a board of county commissioners may set the salaries of the employees and deputies necessary to discharge the functions of the county, only elected county officials, including sheriffs, have the authority to hire persons necessary to carry out the officials' duties." *Bundy*, 215 F. App'x at 761 n.2 (citing N.M. Stat. Ann. § 4-38-19(A) and N.M. Const. art. X, §§ 2(A) & (B)).

Together, these cases beg the question whether a board of commissioners' lack of control over hiring sheriff's office employees is fatal to claims asserted against the board. Indeed, cognizant of the Tenth Circuit's holding in *Bristol*, and its discussion of the limitations on a board of county commissioners' hiring authority in *Bundy*, this Court was hesitant to dismiss Plaintiff's claims against the Taos County Sheriff's Office, anticipating that the Board of County Commissioners of Taos County might thereafter assert that it had no liability as Plaintiff's employer. Notably, if the Taos County Sheriff's Office does not have the capacity to be sued, but the Board of County Commissioners for Taos County has no liability as an employer under the ADA or Title VII, Plaintiff might be left without a remedy for the violations alleged in his Complaint. Upon examination of the cases, the parties' arguments, and other relevant law, however, the Court concludes that neither *Bristol* nor *Bundy* control here.

The plaintiff in *Bristol*, a former confinement officer for the Clear Creek County Sheriff, asserted claims for violations of the ADA against both the board of county commissioners and the sheriff. *Bristol*, 312 F.3d at 1216. The board of county commissioners moved for judgment as a matter of law, arguing that it owed no duty to provide accommodation to the plaintiff under the ADA. *Id.* The plaintiff, on the other

4

hand, maintained that both the board and the sheriff were his employers for ADA purposes. *Id.* The Tenth Circuit explained that the particular context there – "where there [was] more than one alleged employer" – implicated two tests for determining the employer under the ADA: the joint-employer test and the single-employer test. *Id.* at 1218. In a footnote, the court acknowledged that other tests, including the agency test, might be better suited to other contexts. *Id.* at 1218 n.5.

The Tenth Circuit, in *Bristol*, noted that under Colorado law sheriffs have "the exclusive control over the hiring and firing of their employees." *Id.* at 1219 (citing Colo. Rev. Stat. § 30-10-506). Moreover, it found that "even self-imposed limitations on [a sheriff's] right to discharge employees at will are invalid." *Id.* (citing *Seeley v. Bd. of Cty. Comm'rs*, 791 P.2d 696, 700 (Colo. 1990)). Because the sheriff exercised control over labor relations in the sheriff's office under Colorado law, the court determined that the sheriff, not the board, was the plaintiff's employer for purposes of the ADA under both the joint-employer and single-employer tests. *Id.* at 1220.

But Colorado law differs from New Mexico law in terms of the role of sheriff's and boards of county commissioners. Unlike New Mexico law, Colorado law establishes that the sheriff is solely responsible for hiring and firing deputies and cannot relinquish that authority. *See Tunget v. Bd. of Cty. Comm'rs*, 992 P.2d 650, 652 (Colo. Ct. App. 2000) (reasoning that the sheriff, as opposed to the board, hires and fires deputies); S*eeley v. Bd. of Cty. Comm'rs for La Plata County*, 791 P.2d 696, 699 (Colo. 1990) (holding that Colo. Rev. Stat. Ann. § 30-10-506 prevented the sheriff from relinquishing the authority to terminate deputies). In contrast, New Mexico law provides that sheriffs have the power to hire and fire deputies, "except that in counties which have established a merit

5

system by ordinance, the provisions of the ordinance shall control the demotion and discharge of deputies and other employees of the sheriff's office." N.M. Stat. Ann. § 4-41-5. Pursuant to Section 4-41-6:

> [e]ach county is authorized and empowered to establish by ordinance a merit system for the hiring, promotion, discharge and general regulation of the deputies and the employees of the county sheriff's office. The ordinance may, in the discretion of the board of county commissioners, provide for the classification of deputies and other employees and their probationary periods, service ratings, pay scales and ranges, the number of hours of work per week and the methods of employment, promotion, demotion and discharge of such deputies and employees within the limits provided by law.

*Id.* The Taos County Sheriff's Office has demonstrated that its board of county commissioners has, in fact, adopted a merit ordinance, placing employment power over sheriff's deputies with the County Manager, as the Board of County Commissioners' designee. *See Doc. 19-2*, Taos County Ordinance 2006-1, at 1.7 & 6.2; *see also Doc. 19-1*, County Manager's Written Decision in the Matter of the Discipline of Nicolas Lamendola. Thus, despite the authority of elected county officials to hire and recommend salaries, as acknowledged in *Bundy* and Section 4-38-19, in Taos County it is the Board of County Commissioners, through the County Manager, which maintains employment power over sheriff's deputies by virtue of a merit ordinance.

Moreover, even apart from the significant distinctions in the authority to hire and fire sheriff's office employees under New Mexico and Colorado law, a subsequent Tenth Circuit case, *Cink v. Grant County, Oklahoma*, 635 F. App'x 470 (10th Cir. 215), appears to further limit *Bristol's* application. In *Cink*, a former jailer and dispatcher at the county sheriff's office brought an action against the county alleging age and disability discrimination in violation of the ADEA and the ADA. *Id.* at 471. Relying upon *Bristol*,

6

the district court applied the joint-employer and single-employer tests to determine that the county was *not* the plaintiff's employer for purposes of the ADEA and the ADA. *Id.* at 471. On appeal, the Tenth Circuit determined that the district court had "applied the wrong analysis and reached the wrong conclusion." *Id.* at 471. More particularly, it concluded that *Owens v. Rush*, 636 F.2d 283 (10th Cir. 1980), not *Bristol*, provided the proper framework for determining whether the county was the proper defendant for purposes of claims under the ADEA and the ADA. *Id.* at 472.

*Owens* involved a Title VII lawsuit brought by a sheriff's deputy against the Sheriff of Wabaunsee County, Kansas, the Board of County Commissioners of Wabaunsee County, and Wabaunsee County. *Owens*, 636 F.2d at 284. After the district court dismissed the suit on the basis that the sheriff's department did not have the requisite 15 employees, the Tenth Circuit reversed, concluding that the agency relationship sufficed to establish that the county was the employer of the sheriff's staff for purposes of Title VII. *Id.* at 287.

Significantly, in *Cink*, the Tenth Circuit emphasized that *Bristol* did not abrogate *Owens*, summarizing the difference between the two cases as follows:

> *Bristol* held that the Sheriff was a distinct entity from the County Board of Commissioners, and, consequently, the Board could not be deemed an employer of Sheriff's staff absent satisfaction of one of the tests for imputing employer status between separate entities; *Owens* held that the Sheriff was not a distinct entity from – but rather an agent of – the County and, consequently, the County was properly deemed the employer of Sheriff's staff under traditional agency principles.

*Id.* at 473. According to the Tenth Circuit, *Bristol* did *not* determine that the joint-employer and single-employer tests displaced all other principles relating to employer status under federal employment-discrimination statutes. *Id.* As such, *Cink* teaches that

7

courts should *only* employ *Bristol's* joint-employer and single-employer tests when there is no dispute over the "jurisdictional numerosity requirement" *and* when a case "involve[s] multiple separate entities as alleged potential employers." *See id.* at 472-74. Because Plaintiff's Complaint does not name multiple separate entities as alleged employers, and because New Mexico law concerning authority over sheriff's office employees departs significantly from Colorado law, *Bristol* does not resolve the issue before the Court.

It is also noteworthy that the Tenth Circuit was not confronted with Federal Rule of Civil Procedure 17 or a state naming statute in *Bristol*. Indeed, the Taos County Sheriff's Office submits that the Tenth Circuit has not yet addressed the interplay of Rule 17 and a state naming statute. The Court's own research comports with Defendant's position. In the absence of guidance from the Tenth Circuit, Taos County Sheriff's Office urges the Court to follow two cases from the Eighth and Fifth Circuits, respectively: *Lundquist v. University of South Dakota Sanford School of Medicine*, 705 F.3d 378, 380 (8th Cir. 2013) and *Darby v. Pasadena Police Department,* 939 F.2d 311 (5th Cir. 1991). Of these, the Court finds *Darby* most persuasive.

In *Darby*, a former police officer for the City of Pasadena, Texas sought redress under Title VII for his discharge from the city's police department. *Darby*, 939 F.2d at 312. The district court dismissed his complaint, however, because he had only sued the police department, which the court found to lack "jural existence." *Id.* On appeal, the plaintiff argued that Title VII conferred "jural existence" on the police department as an agent of the City of Pasadena and that Title VII overrides local law and gives plaintiffs the right to sue a police department as an independent entity. *Id.* The Fifth Circuit

disagreed, concluding that Title VII did not "provide an exception to the normal rule that a government entity may choose the level at which it will pursue and defend all lawsuits involving it." *Id*. Applying Federal Rule of Civil Procedure 17(b), the court explained that the City of Pasadena was a "home rule municipality," which had not granted the police department the power to be sued. *Id.* at 313. As such, the plaintiff could only pursue a cause of action against the City of Pasadena, which had been designated by state law as responsible for city lawsuits. *Id.* at 314.

Similarly, in *Lundquist*, the Eight Circuit considered whether the University of South Dakota Sanford School of Medicine lacked the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b) and South Dakota law. The court noted that the South Dakota legislature had explicitly given the University's Board of Regents the power to sue and be sued. *Id.* at 380 (citing S.D. Codified Laws § 13-49-11). Accordingly, the court affirmed summary judgment in favor of the University, determining that it was not a viable defendant. *Id.* at 381.

The analyses of various district courts and secondary sources are also in accord with that of the Fifth and Eighth Circuits. For example, the Eastern District of New York addressed city departments' amenability to suit in *United States v. City of New York*, 683 F. Supp. 2d 225 (E.D.N.Y. 2010), v*acated on other grounds by United States v. City of New York*, 717 F.3d 72 (2d Cir. 2013). There, the court dismissed claims by the United States, including claims asserted under Title VII, against the Fire Department of New York ("FDNY") and the New York City Department of Citywide Administration Services ("DCAS"). *Id.* at 243. It explained that under Rule 17(b) "a party's amenability

9

to suit in federal court is determined by the law of the state in which the district court is located." It further held that neither FDNY nor DCAS were suable entities because:

> [t]he State of New York has neither stated nor implied that the FDNY or DCAS can be sued individually. To the contrary, under the New York City Charter, "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."

*Id.* (citing N.Y. City Charter Ch. 17, § 396). Likewise, in *Gillespie v. City of Indianapolis*, 13 F. Supp. 2d 811 (S.D. Ind. 1998), a city police officer sued the city, the city police department, and the police chief, seeking injunctive relief to protect his continued employment with the police department. *Id.* at 814-15. The court dismissed the plaintiff's claims against the city police department, concluding that it was "a municipal department not separately suable from the City." *Id.* at 816. Finally, American Jurisprudence, Second Edition, has synthesized the law in this area, reporting that "[g]enerally, the departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority." 56 Am. Jur. 2d Municipal Corporations, Counties, and Other Political Subdivisions § 736 (citing *Gillespie*, 13 F.Supp. 2d 811).

The Court finds no sound basis for departing from these well-reasoned decisions premised on Rule 17(b) and applicable state law. As such, it applies Rule 17(b) and New Mexico law without resort to the employer tests identified in *Bristol*. New Mexico law requires that all claims against a county, including its departments, be brought against its board of county commissioners. *See* N.M. Stat Ann. § 4-46-1. In other words,

Section 4-46-1 dictates that the Taos County Sheriff's Office lacks the capacity to be sued, even under federal statutes such as the ADA and Title VII.

Before dismissing Taos County Sheriff's Office based upon the operation of Rule 17(b) and Section 4-46-1, however, the Court must satisfy itself that application of § 4-46-1 does not place significant limitations on Plaintiff's ability to pursue his federal causes of action. While a state may limit *state* causes of action, it cannot, through a naming statute or otherwise, effectively undermine a Plaintiff's ability to assert a federal cause of action. *See Haywood v. Drown*, 556 U.S. 729, 736 (2009) (holding that a New York statute which divested state courts of jurisdiction over § 1983 suits seeking damages against corrections officers was unconstitutional and warning that states "lack authority to nullify a federal right or cause of action they believe is inconsistent with their local policies"). To this point, Plaintiff relies upon a footnote in *Gallegos v. Bernalillo County Board of County Commissioners*, 272 F. Supp. 3d 1256 (D.N.M. 2017), in which Judge Browning of this District concluded that "§ 4-46-1 cannot and does not limit § 1983 actions." *Id.* at 1269 n.4. According to Plaintiff, it follows that Section 4-46-1 also cannot limit Plaintiff's federal causes of action here.

In *Gallegos*, Judge Browning considered the viability of a plaintiff's state and federal claims in light of N.M. Stat. Ann. § 4-46-1. He held that the plaintiff could not assert a claim against Bernalillo County Metropolitan Detention Center ("BCMDC") under the New Mexico Tort Claims Act ("NMTCA"), because Section 4-46-1 unambiguously provides that in *all suits* against a county, the name in which the county shall be sued is the board of county commissioners of that county. *Id.* at 1267-68. He explained that "[i]f § 4-46-1 were not construed as a limitation on claims that the

11

NMTCA allows, then § 4-46-1 would be meaningless." *Id.* at 1268. As to the plaintiff's federal § 1983 claim, Judge Browning again found, albeit for a different reason, that the plaintiff could not assert a claim against BCMDC. *Id.* at 1267. He reasoned that a detention center is not a suable entity under § 1983, "because it is not a 'person'" as defined by that statute. *Id.* He rejected the possibility, however, that § 4-46-1 served as a limitation on the plaintiff's § 1983 claim. *Id.* at 1269 n.4. Acknowledging that there were no cases addressing § 4-46-1's ability to limit § 1983, he suggested that *Haywood* implied that states cannot limit § 1983 actions through state legislation. *See id.* He explained that "[j]ust as New York is not able to say, in a § 1983 context, a plaintiff cannot sue a corrections officer, but must instead sue the state, New Mexico is not able to say, in a § 1983 context, that the plaintiff cannot sue BCMDC, but instead, must sue the board of county commissioners." *Id.*

But, in this Court's view, applying the reasoning articulated in Judge Browning's footnote to the present context would go too far. In contrast to the New York statute at issue in *Haywood*, Section 4-46-1 does not undermine Plaintiff's federal causes of action or place significant restraints thereon. The subject New York statute, on the other hand, divested courts of jurisdiction over Section 1983 suits that seek damages from corrections officers[1] and provided an alternative forum – the Court of Claims – which did not afford plaintiffs the same relief or procedural protections as state courts of general jurisdiction. *Haywood*, 556 U.S. at 734. Specifically, plaintiffs seeking relief in the Court

---

[1] Although a plaintiff could, under the New York statute, still assert a claim against the State in the Court of Claims based upon a corrections officer's unlawful conduct, the Court noted that he "cannot use § 1983 as a vehicle for redress because a State is not a 'person' under § 1983." *Haywood*, 556 U.S. at 734 n.4 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989)). As such, the New York statute effectively eliminated § 1983 as a vehicle to redress civil rights violations by corrections officers.

12

of Claims were not entitled to a jury trial, attorney's fees, punitive damages, or injunctive relief. *Id.* But, here, Plaintiff may still maintain the same causes of action and obtain the same relief in the same court and under the same federal statutes based upon the purported actions of the Taos County Sheriff's Office. Section 4-46-1 merely dictates that he do so by naming the Taos County Board of County Commissioners as his defendant, rather than the subordinate county entity which he chose to name in his Complaint.

Ultimately, Taos County may choose the level at which it will defend all lawsuits against it. Neither Section 4-46-1 nor *Bristol* undermines Plaintiff's state or federal actions, and the plain language of Section 4-46-1 requires that Plaintiff name the Board of County Commissioners of Taos County as his defendant, rather than the Taos County Sheriff's Office. Accordingly, the Court will grant Defendant's Motion to Dismiss.

At the April 19, 2018 hearing, Plaintiff's counsel argued that, in the event Plaintiff's claims against the Taos County Sheriff's Office were dismissed, Plaintiff should be permitted the opportunity to amend his Complaint. *Doc. 15* at 3. The Court explained that the District's Local Rules require the filing of a motion to amend, accompanied by the proposed amended pleading. *Doc. 15* at 3. Plaintiff has not, as of yet, moved to amend or submitted any proposed amended complaint for the Court's consideration. Nevertheless, given this Court's preference for addressing claims on the merits, the difficulty in discerning the suable entity or entities in this case, and the lack of discernable prejudice to Taos County Board of County Commissioners, the Court will give Plaintiff until September 14, 2018 to move to amend his Complaint in order to add the Board of County Commissioners of Taos County as a defendant. *See Darby*, 939

F.2d at 315 (holding that the district court abused its discretion when it denied the plaintiff leave to amend his complaint to add the city as a defendant, where the city had notice of the claim against it by virtue of the plaintiff's suit against the city's police department).

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendant Taos County Sheriff's Department (*Doc. 4*) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave until September 14, 2018 to move to amend his complaint in order to add as a defendant the Board of County Commissioners of Taos County.

_____
UNITED STATES MAGISTRATE JUDGE